# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 14-20019
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2014

Lyle W. Cayce
Clerk

————

ROGER LAW,

Plaintiff-Appellant

v.

OCWEN LOAN SERVICING, L.L.C.,

Defendant-Appellee

————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2172

————

Before REAVLEY, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Roger Law appeals the dismissal of his claims arising out of a foreclosure on his property. He also argues that he should have been allowed to amend his complaint in lieu of its dismissal. We AFFIRM the dismissal, thereby denying Law's request for a remand and leave to amend.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20019

FACTS AND PROCEDURAL BACKGROUND

In September 2005, Roger Law purchased property located in Missouri City, Texas for $284,800. He financed the purchase through a promissory note made payable to AAMES Funding Corporation. As security for the note, Law executed a purchase money deed of trust encumbering the property. The deed of trust provided that, should Law fail to make payments on the note when due, the servicer could enforce the deed of trust by selling the property in accordance with the law and the provisions set out in the deed of trust.

After Ocwen Loan Servicing, L.L.C. became the servicer of Law's note in 2010, Law contacted Ocwen to request a loan modification because he was having difficulty making his monthly payments. In January 2011, Ocwen sent Law a modification agreement that Ocwen had not signed. Acceptance was conditioned upon Law's faxing a signed copy of the agreement to Ocwen and making a down payment by February 3, 2011. Law signed the agreement on February 7, and faxed it to Ocwen on February 9. He made the down payment on February 8.

In April 2012, Law brought suit against Ocwen after it initiated foreclosure proceedings. Law asserted causes of action for violations of the Texas Property Code, breach of contract, violations of the Real Estate Settlement Procedures Act ("RESPA"), and negligence.[1] He obtained a temporary restraining order against Ocwen in May 2012. In August 2013, Ocwen moved to dismiss the claims under Rule 12(b)(6). The district court granted the motion in December 2013. Law timely appealed to this court, arguing that his pleadings were sufficient to survive dismissal and, in the alternative, that he should be granted leave to amend his complaint.

---

[1] Law also claimed violations of the Texas Debt Collection Practices Act and requested injunctive relief. He does not contest the dismissal of these claims on appeal.

2

No. 14-20019

DISCUSSION

We review a dismissal under Rule 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading will be judged insufficient if it offers "a formulaic recitation of the elements of a cause of action" or "a naked assertion" without "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.[2]

I.    *Texas Property Code § 51.002*

Law argues that Ocwen violated the Texas Property Code's notice provisions regarding foreclosure. Those provisions require a mortgagee to: (1) notify the mortgagor of a default and afford him 20 days to cure and (2) notify the mortgagor at least 21 days before a foreclosure sale. TEX. PROP. CODE § 51.002(b)(3), (d).

Law asserts that foreclosure was "premature" because he "raised issues regarding the executed modification agreement and escalations in his escrow account . . . ." The Property Code's notice requirements, however, make no mention of a mortgagee's duty to forestall foreclosure so long as the mortgagor

---

[2] On appeal, Law asserts various legal theories and factual allegations in support of his claims that were not expressed in his complaint. We decline to consider them. Review of a Rule 12(b)(6) dismissal is, by its very nature, limited to the allegations and theories set forth in the complaint that the district court had before it when granting the motion to dismiss. Moreover, this approach accords with our general practice of not considering issues raised for the first time on appeal. *See Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010).

seeks a modification.  We also see no basis for reading such requirements into the Property Code.

The Property Code provides debtors an opportunity to cure a default after receiving notice.  Law does not allege that Ocwen failed to provide proper notices, that his loan was not in default, or that he attempted to cure his default.  Consequently, Law has not alleged facts demonstrating that he is entitled to relief under the Texas Property Code.

## II.     *Breach of Contract*

Law asserts numerous grounds for breach of contract.  These include Ocwen's alleged failure to honor the loan modification proposal and its alleged failure to comply with United States Department of Housing and Urban Development ("HUD") and Home Affordable Modification Program ("HAMP") regulations.  We examine each of these claims.

### a. *Loan Modification Agreement*

To prove breach, a party must first demonstrate the existence of a valid contract.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  It follows that, to prove breach of a modified contract, a party must first demonstrate the existence of a valid modification.  In his complaint, Law maintains that Ocwen breached the February 2011 loan modification agreement.  For two reasons, we conclude that the loan modification agreement was ineffective.  Ocwen therefore could not have breached the agreement.

First, to accept Ocwen's loan modification proposal, Law was required to comply with all conditions placed upon the time and manner of acceptance.  *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995).  Those conditions included Law's signing and faxing the agreement to Ocwen and making a down payment by February 3, 2011.  Law, however, did not sign the agreement until

February 7, and he did not fax the agreement to Ocwen until February 9. Furthermore, he did not send the required payment until February 8. Because Law failed to meet these conditions, we conclude that he never accepted Ocwen's offer to modify the loan.

Second, the agreement did not satisfy the Texas Statute of Frauds, which requires that certain contracts be: (1) reduced to writing and (2) signed by the party to be bound by the agreement. TEX. BUS. & COM. CODE § 26.01(a). It is undisputed that Ocwen did not sign the proposed modification agreement. Thus, the only question is whether the modification agreement was subject to the Statute of Frauds. In Texas, an agreement materially altering a contract must satisfy the Statute of Frauds when the underlying contract was subject to the Statute of Frauds. *See Hondo Oil & Gas Co. v. Tex. Crude Operator, Inc.*, 970 F.2d 1433, 1438 (5th Cir. 1992); *Garcia v. Karam*, 276 S.W.2d 255, 257 (Tex. 1955). In Texas, loan agreements for sums exceeding $50,000 must satisfy the Statute of Frauds. TEX. BUS. & COM. CODE § 26.02(b). Thus, because the loan agreement between Law and Ocwen for $284,000 was required to satisfy the Statute of Frauds, so too was the proposed modification agreement. Because the loan modification proposal failed to do so, it was not a valid contract upon which a claim of a breach can be based.

### b. HUD and HAMP Regulations

We have previously held that the HUD Handbook does not afford a private cause of action. *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-61 (5th Cir. 1977). This circuit has not precedentially resolved whether there is a private cause of action under the HAMP regulations. We have held in an unpublished opinion that there is not. *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 552 (5th Cir. 2012) (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012)). We need not answer that question here,

because Law has not presented any argument to suggest that there is a private right of action.

Thus, in order to bring suit for violations of HUD or HAMP regulations, Law must show that the regulations were incorporated into the deed of trust. Law points to no language in the deed of trust that incorporates HAMP. With regard to the HUD regulations, Law's complaint states that "the Note and Deed of Trust expressly provide that the acceleration and foreclosure on plaintiff['s] loan are subject to limitation through regulations promulgated by the HUD Secretary." The only possible source of this contention is the statement in the deed of trust that its provisions "shall not limit the applicability of federal law to this Deed of Trust." This language does not mention the HUD regulations, much less "expressly" incorporate them, as the complaint states. A deed of trust's mere mention that federal law applies can hardly be construed as affording a private cause of action under statutes that do not provide one. As a result, Law could not assert claims for violations of the HUD and HAMP regulations.

III.    *Real Estate Settlement Procedures Act*

Law claims that Ocwen failed to provide him with notice that it had acquired his loan from AAMES Funding Corporation. Under RESPA, a "transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." 12 U.S.C. § 2605(c)(1). In order to recover for a violation, a borrower must show "actual damages to the borrower as a result of the [servicer's] failure" to comply with RESPA. § 2605(f)(1).

Law's complaint, in addition to alleging a failure by Ocwen to give notice, alleges that Law sustained harm because "this is his homestead and he will lose all of the money previously invested in the property . . . ." Law does not,

however, allege facts demonstrating that these damages were the *result of* Ocwen's failure to provide him with the required notice. He does not allege, for example, that as a result of Ocwen's failure to provide notice, he mistakenly continued sending his payments to AAMES Funding Corporation rather than sending them to Ocwen, resulting in foreclosure by Ocwen. Indeed, this did not occur. Because Law alleged no facts upon which his injuries could be viewed as resulting from Ocwen's failure to provide him with notice under RESPA, we conclude that the district court correctly dismissed his claim.

## IV.    *Negligence*

Law contends that Ocwen negligently breached various duties that it owed to Law, including the duty to provide notice of a transfer, the duty to manage its loans properly, the duty to provide proper notices prior to foreclosure, and the duty to protect a mortgagor's rights when he applies for a loan modification. For two reasons, we conclude that dismissal of Law's negligence claims was appropriate.

First, the duties Law mentions appear to arise from the statutes upon which he bases his other claims. More specifically, the duty to provide notice of a transfer derives from RESPA; the duty to manage loans properly derives from HUD regulations; the duty to provide proper notices before foreclosing derives from the Texas Property Code; and the duty to protect a mortgagor's rights when he applies for a loan modification derives from the HAMP regulations. Perhaps for this reason, Law begins his negligence claim by reiterating his contention that the deed of trust incorporated the HUD regulations, spends the bulk of his argument discussing perceived RESPA violations, and never mentions specific provisions in the deed of trust or common-law principles giving rise to the duties he claims Ocwen violated. Therefore, because Ocwen's negligence claims are, in essence, reiterations of

his statutory claims, our grounds for affirming the district court as to the statutory claims apply equally here.

Second, even if we were to assume that the duties Law mentions arise from the deed of trust, his negligence claims are barred by the economic loss rule. Under this doctrine, "a claim sounds in contract when the only injury is economic loss to the subject of the contract itself." *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011). In applying the rule, courts consider whether the defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). When no independent basis for liability exists, the rule applies. *Id.* In this case, Law's complaint asserts no basis for the duties Ocwen owed to Law other than the deed of trust and various statutes, the latter of which we have already addressed. Because Law has not alleged non-economic damages resulting independently of the deed of trust, the economic loss doctrine bars Law's negligence claims.

## V.   *Leave to Amend*

As an alternative position, Law requests leave to amend his complaint and also contends that the district court should have construed the new factual allegations set forth in his response to Ocwen's Rule 12(b)(6) motion as a request for leave to amend. Under Rule 15(a), a court should "freely give leave [to amend a complaint] when justice so requires." FED. R. CIV. P. 15(a)(2). Nevertheless, a party must "expressly request" leave to amend. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). "A party who neglects to ask the district court for leave to amend cannot expect to receive such dispensation from the court of appeals." *Id.* Although this request need not be contained in a formal motion, "[a] bare request in an opposition to a motion to dismiss – without any indication of the particular

grounds on which the amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quotations and citation omitted).

In *Willard*, we held the following language in a plaintiff's response to a Rule 12(b)(6) motion insufficient to constitute a request for leave to amend: "[T]he only relief possibly available to [the defendant] at this stage of the case is that [the plaintiff] replead." *Id.* (quotations omitted).  We have also held, in an unpublished opinion, that a district court's *sua sponte* discussion of whether to allow a defendant to amend his complaint did not constitute a request by the defendant for leave to amend. *McClaine v. Boeing Co.*, 544 F. App'x 474, 478 (5th Cir. 2013).

Law's response to Ocwen's motion to dismiss, while containing new factual allegations, contained no language that might be construed as a request for leave to amend his complaint, let alone *express* language requesting leave and indicating the particular grounds on which the amendment was sought.  Moreover, the district judge did not discuss granting Law leave to amend at any point.  In short, there is nothing in the record that would allow us to conclude that Law requested leave to amend his complaint prior to this appeal.

Law cites several of our cases for the proposition that a claim raised for the first time in response to a dispositive motion should be treated as a request for leave to amend.  *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972); *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010).  These cases, however, did not involve defendants who sought to raise new factual allegations in response to motions to dismiss, as did *Willard* and *McClaine*.  *See Willard*, 336 F.3d at 387; *McClaine*, 544 F. App'x at 478.  Instead, they involved defendants who sought to raise new claims in response to motions for summary judgment.  *See Stover*, 549 F.3d at 989 n.2; *Sherman*,

455 F.2d at 1242; *Riley*, 379 F. App'x at 341.  Because we are faced with the former situation and not the latter, the cases cited by Law are inapposite. Accordingly, we conclude that Law did not request leave to amend his complaint at the district court and is not entitled to such relief from this court.[3]

AFFIRMED.

---

[3] Because we find that Law's response to Ocwen's Rule 12(b)(6) motion did not constitute a request for leave to amend his petition, we do not consider whether an amendment containing the additional factual allegations would be "futile" and thus within the district court's discretion to deny.  *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).